[Cite as *In re Estate of Hersch*, 2014-Ohio-612.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: ESTATE OF BEVERLY HERSH | : | APPEAL NO. C-130212<br>TRIAL NO. 2009002997 |
| | : | |
| | : | *O P I N I O N.* |

Civil Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 21, 2014

*Christopher J. Mulvaney* and *Bradley D. Kaplan*, for Appellant Hadassah, The Women's Zionist Organization of America, Inc.,

*Mike DeWine*, Ohio Attorney General, and *Vivian P. Tate*, Assistant Attorney General, for unnamed beneficiaries of the Beverly W. Hersh Trust,

*Joshua L. Goode*, for Successor Cotrustees of the Beverly W. Hersh Trust.

Please note: this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}     This is an appeal from the Hamilton County Probate Court's denial of a motion to vacate an agreed judgment entry.  The entry, which distributed funds from a trust to the trust beneficiaries, had been drafted by the trustees and signed by all the parties.  Several weeks after the judgment entry was adopted by the court, one of the party beneficiaries moved to vacate the judgment, asserting that all parties had been mistaken as to its terms.  The probate court held a hearing on the matter and found that grounds did not exist to vacate the judgment.  A motion to vacate a judgment is governed by the standards set forth in Civ.R. 60(B), which in this case requires that the beneficiary demonstrate "excusable neglect."  The beneficiary has not explained how its failure to carefully read the provisions of the agreed entry prior to signing it was excusable or unavoidable, and therefore, it has not demonstrated a right to relief under the rule.  Accordingly, we find no abuse of discretion by the probate court in denying the motion to vacate, and we affirm the decision below.

I.

{¶2}     Beverly Hersh was a generous woman who made the mistake of trusting the wrong person with the management of her estate. Ms. Hersh died in 2005.  Her will directed that her residuary estate go into the Beverly W. Hersh Trust ("Interim Trust"), which then provided for further charitable distributions.  Twenty percent of the Interim Trust was to go to Hadassah Hospital, or alternatively to Hadassah, the Women's Zionist Organization of America, Inc., ("Hadassah").  The remaining 80 percent was divided into two secondary trusts:  30 percent was allocated to the Beverly W. Hersh Charitable Trust and 50 percent went to the Hersh Revocable Trust, which was subsequently reformed as the Hersh Needy Benefits Foundation.  The value of the residuary estate at

the time of Ms. Hersh's death is disputed, but was believed to have been between approximately $12.5 and $15.8 million.

{¶3}    Unfortunately, Ms. Hersh appointed her long-time advisor and attorney Robert Schwartz as executor and trustee.  Schwartz proceeded to embezzle large sums. Although Hadassah contends that Schwartz did make some charitable donations from the secondary trusts, the amount of legitimate distributions is unascertainable. Schwartz was indicted in federal court and pleaded guilty to mail fraud and filing a false tax return.  The plea agreement required him to pay restitution to Hadassah in the amount of $2,292,469—the amount it would have received but for the theft, less some $210,000 it had already received as distributions from the estate.[1]  Hadassah has collected $1,355,542 under the restitution order from litigation against Schwartz and his nephew.

{¶4}    Following Schwartz's removal, the probate court appointed new trustees to manage the estate and administer distributions.  The present dispute arose when the new trustees requested the court's permission to make a partial distribution to the beneficiaries in accordance with the 20/30/50-percent allocations provided for in the Interim Trust.  Hadassah objected to the partial distribution, asserting that the estate had contained upwards of $15 million at the time of Ms. Hersh's death, and therefore, it should have received at least $3 million from the Interim Trust.  Hadassah further argued that, because Schwartz made some legitimate distributions via the secondary trusts prior to his removal as trustee, the court should reform the allocations in the Interim Trust to increase Hadassah's distribution from 20 to 40 percent.

---

[1] This figure was derived from a 2005 tax filing valuing the estate at roughly $12.5 million. Hadassah was the only direct victim of Schwartz's mail fraud, which stemmed from written misrepresentations made to Hadassah about the value of the estate.  For this reason, the secondary trusts were not included in the restitution order.

{¶5} At a July 16, 2012 hearing on Hadassah's objections, the court expressed concern about deviating from the 20/30/50-percent allocations, and asked the parties to negotiate the distribution terms. The parties returned on August 8, 2012, and presented an agreement reached between Hadassah and the Office of the Ohio Attorney General, which represented the unnamed charities qualifying as potential beneficiaries of the secondary trusts. The parties proposed increasing Hadassah's distribution to 30 percent. The parties explained that Hadassah's distribution was adjusted upward in consideration of two factors: Schwartz did use an undetermined amount of money from the secondary trusts for the benefit of needy people, and Hadassah expended its own resources to obtain a partial recovery from Schwartz. The court continued the case to consider the proposal.

{¶6} At a hearing held on September 28, 2012, the parties proposed an alternative arrangement to the court, by which Hadassah would receive its 20 percent distribution from the Interim Trust, and in addition, a secondary trust would make further distributions to Hadassah under the theory that Hadassah was a qualifying charity eligible for distributions. This proposal would result in Hadassah receiving a total distribution of 30 percent of the estate. The court found this plan to be preferable because it kept Ms. Hersh's expressed 20/30/50-percent allocations from her estate intact. The following entry was drafted by the trustees and presented to the court:

> The parties hereto agree that distributions shall be in the original percentages of 20% to Hadassah, 30% to the Beverly W. Hersh Charitable Trust and 50% to the Hersh Needy Benefits Foundation. However the parties further agree that Hadassah, the Women's Zionist Organization of America, Inc. qualifies as a potential beneficiary of The Beverly W. Hersh Charitable Trust and that additional distributions can be made to

Hadassah from the Beverly W. Hersh Charitable Trust in order to result in a total distribution to Hadassah equal to, *when combined with the sums received under the Restitution Order against Robert L. Schwartz*, a total sum of, at least, 30% of the total to be distributed from the combined "Hersh Charitable Trusts" by the Successor Co-Trustees.

(Emphasis added.)

{¶7}   Twice during the hearing, the court inquired of the parties whether "this accounts for the amounts that were received [from the restitution order]," and twice a trustee answered in the affirmative, without objection or correction. Counsel for the trustees, Hadassah, and the Attorney General's office signed the entry and filed it with the court on October 1, 2012, and the court entered the judgment on the same day.

{¶8}   On October 18, the trustees filed a motion to amend the October 1 entry and proposed an amended entry that "more clearly articulates the distribution plan that was agreed upon" by the parties. The key difference was that in the proposed amended entry, the 30 percent to be given to Hadassah would be in addition to the funds it had received as restitution. The proposed entry read as follows:

[A]dditional distributions can be made to Hadassah from the Beverly W. Hersh Charitable Trust in order to result in a total distribution to Hadassah equal to the sum of at least 30% of the funds that have been and will be distributed by the successor co-trustees. This distribution shall be *in addition to any restitution recovery received by Hadassah or funds received by Hadassah from other means.*

(Emphasis added.)

{¶9}   A hearing on the motion to amend was held on November 13, 2012. The court denied the motion, noting that the October 1 entry had been drafted by the parties

and reflected what the court believed to be the parties' agreement, and that Hadassah would receive a windfall if the proposed entry were adopted.

{¶10} The parties returned to court on January 28, 2013. The court entertained another proposal that would ensure Hadassah received the entire amount to which it was entitled under the restitution order—$2,292,469. Because Hadassah had already received a total of $1,355,542 under the restitution order, it needed an additional $936,927 to satisfy the order. Once the estate fulfilled that amount, then the distributions would continue in the 20/30/50 split set forth in the Interim Trust. Counsel for Hadassah stated that he would have to consult his client, but that he thought the proposal would be acceptable. The court set a date for the parties to tender a new proposed entry detailing this arrangement.

{¶11} Instead, three days later, Hadassah filed a motion to vacate the October 1 entry and again asked that the October 18 proposed entry be adopted. As the parties could not reach further agreement, the court overruled the motion to vacate and maintained the October 1 entry as its judgment. In its decision, the court found that "no proposal aligned with the Decedent's wishes will satisfy Hadassah," and concluded that "[s]ince Hadassah will not agree to any other proposals advanced by the parties and the Court, the Court declines to revisit the Agreed Entry filed on October 1, 2012, that was proposed, prepared, and signed by the parties, including Hadassah." It is from the court's decision denying the motion to vacate that Hadassah now appeals.

II.

{¶12} In its sole assignment of error, Hadassah challenges the trial court's decision denying its motion to vacate and upholding the October 1 entry. Hadassah asserts that the court improperly substituted its own discretion for that of the trustees, erred by upholding an entry that all parties acknowledge did not reflect their agreement,

6

and lacked subject-matter jurisdiction to consider funds obtained by Hadassah pursuant to the restitution order.

{¶13}  Although not referenced in Hadassah's brief, Civ.R. 60(B) governs a motion for relief from judgment.  To obtain relief under the rule, a party must demonstrate that (1) the party has a meritorious claim to present if relief is granted; (2) the party is entitled to relief under one of the provisions of Civ.R. 60(B); and (3) the motion has been made within a reasonable time.  *See GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150-151, 351 N.E.2d 113 (1976).  The decision of whether to grant relief lies within the sound discretion of the trial court.  *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988).

{¶14}  Under Civ.R. 60(B)(1), a trial court may relieve a party from a final judgment that resulted from "mistake, inadvertence, surprise or excusable neglect."  We applied this provision to a similar scenario in *Union Savings Bank v. James Martin Trucking*, 1st Dist. Hamilton No. C-120224, 2012-Ohio-5758.  In that case, we considered whether an attorney's failure to notice a provision in an agreed foreclosure decree that was unfavorable to his client constituted excusable neglect for the purposes of relief under Civ.R. 60(B).  We held that it did not.  In reaching that conclusion, we explained that "courts are not inclined to find excusable neglect in situations where an attorney's allegedly neglectful conduct is an affirmative act."  *Id.* at ¶ 17.  Noting that the attorney had affirmatively participated in the negotiation and drafting of the foreclosure decree, we concluded that the attorney's failure to recognize that language in the decree could be harmful to his client did not constitute excusable neglect.  *Id.* at ¶ 18.

{¶15}  Here, the attorney for the trustees drafted the 123-word entry.  The parties presented the draft to the court with assurances that it embodied the complete terms of their agreement.  Representatives of each party, including Hadassah, signed the

agreement, which was then filed with the court three days later. Hadassah has not alleged any fraud by other parties in inducing it to sign the agreement. Nor has Hadassah explained how any error in drafting or signing the agreement was excusable or unavoidable. *See State v. The Bug Inn*, 2d Dist. Miami No. 90-CA-23, 1991 Ohio App. LEXIS 1532, *6 (March 20, 1991) (party requesting relief under Civ.R. 60(B)(1) must make some showing as to why the failure to avoid the error was justifiable). Rather, the best it can do is argue that its attorney neglected to read closely the relevant paragraph prior to signing the document. Indeed, counsel for Hadassah conceded at the January 28 hearing that he did not recall even seeing the agreement, despite his signature being clearly marked on the entry. "We are not prepared to hold that it is an abuse of the trial court's discretion to find inexcusable the failure of a party and an attorney to read carefully the provisions of an agreed judgment entry before approving and signing it." *Berch v. Berch*, 2d Dist. Montgomery No. 18121, 2000 Ohio App. LEXIS 3028, *5 (July 7, 2000).

{¶16} Hadassah contends that, by rejecting the proposed entry, the court improperly interfered with the trustees' exercise of discretion in distributing trust assets. We note that the trustees have not appealed the court's decision. Moreover, we perceive no improper interference by the court. The language in the October 1 entry leaves significant discretion to the trustees. The entry acknowledges the parties' understanding that Hadassah "qualifies as a *potential* beneficiary" of the charitable trust and that "additional distributions *can* be made to Hadassah" from that trust. Further, there is nothing in the entry that limits the trustees' discretion to make distributions to Hadassah. Rather, it states that Hadassah can receive *"at least*[] 30% of the total to be distributed from the combined 'Hersh Charitable Trusts' by the Successor Co-Trustees."

Even if the restitution recovery is subtracted from the 30 percent, this language clearly gives the trustees discretion to distribute more than 30 percent to Hadassah.

{¶17} Hadassah also argues that the probate court abused its discretion by refusing to vacate the October 1 entry when that entry, purportedly, did not reflect the parties' actual agreement. An agreed judgment is just as much of a judgment as any other judgment, and the decision to accept or reject an agreed entry is within the trial court's sound discretion. *See Rorick v. Rorick*, 9th Dist. Lorain No. 09CA009533, 2009-Ohio-3173, ¶ 7. We presume the court independently reviewed the judgment entry, and we do not give its entry of the judgment any less effect simply because it had initially been prepared by the parties. Moreover, we are not convinced that the October 1 entry failed to reflect the parties' agreement at that time. The court specifically inquired as to whether the allocation to Hadassah accounted for the amounts recovered pursuant to the restitution order, and received affirmative responses from the trustees. To the extent that Hadassah challenges the court's interpretation of the agreement, it certainly made no effort to correct the court's understanding at the September 28 hearing, and it affirmatively signed the entry—drafted by the trustees—containing unambiguous language to that effect. We cannot say the probate court abused its discretion by declining to vacate a judgment adopting an agreed entry that the parties drafted, signed, and presented to the court.

{¶18} Finally, Hadassah contends that the probate court lacked subject-matter jurisdiction to distribute funds recovered by Hadassah in separate litigation. But the probate court did not distribute these funds. Instead, the court merely took into account the funds already received by Hadassah in fashioning a remedy. The probate court has "plenary power at law and in equity" to fully dispose of any matter properly before it. R.C. 2101.24(C). The court had jurisdiction over the trusts, and it was fully within the

court's power to consider amounts recovered by Hadassah under the restitution order when evaluating whether distributions from the Interim Trust were equitable.

**{¶19}** We find that Hadassah has not shown any right to relief under the provisions of Civ.R. 60(B). Therefore, we need not consider the other elements of the *GTE* test. The sole assignment of error is overruled.

### III.

**{¶20}** Because Hadassah has not established that it is entitled to relief from judgment under Civ.R. 60(B), we find no abuse of discretion in denying the motion to vacate and we affirm the judgment below.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **HILDEBRANDT, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.